IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTWAN JERMAINE HOSKINS,<br><br>Defendant. | Case No. 4:25-cr-41 |

**OPINION & ORDER**

Defendant Antwan Jermaine Hoskins moved to suppress evidence police obtained after they detained him pursuant to a 911 report of a domestic dispute. ECF No. 28. The information 911 dispatchers gave the officer who detained the defendant supported reasonable articulable suspicion that the defendant may have committed a crime. Therefore, the motion to suppress will be **DENIED.**

**I.  BACKGROUND**

The Hampton Police Department received two 911 calls from a distressed juvenile who reported a domestic dispute between his mother and her husband. ECF No. 29-1; ECF No. 29-2. It is undisputed that dispatch conveyed to the responding officer, Officer M. A. Torres Reilly that:

- There was a report of a domestic assault at a particular address;

- The caller was a male juvenile;

- The domestic dispute was between a male and a female—the caller's "mother and father;"

- The alleged male assailant had a firearm, had pointed it at the female's head, and currently had the firearm in his hand; and

- The individuals referenced by the caller had gone outside.

ECF No. 34 at 1; Def. Ex. 2 at 00:01–01:15. At a hearing on the motion, Officer Torres Reilly testified that dispatch also informed him that the call came through the 911 system. ECF No. 40 at 9:14–16.

Additionally, a fellow officer advised "units going to the [scene]" that the "suspect possibly has felony warrants for domestic assault." Def. Ex. 2 at 01:06–01:13; *see* ECF No. 28-4 at 5. Because he had been dispatched to the location for an alleged domestic assault approximately one month prior, Officer Torres Reilly was familiar with the address and believed that the individuals involved in the present domestic dispute were likely the defendant and J.H. ECF No. 34 at 1–2; ECF No. 40 at 10–11. Based on his previous interaction with J.H., Officer Torres Reilly knew that J.H. had a child who might be the 911 caller. ECF No. 40 at 7–11.

Officer Torres Reilly drove to the address dispatch provided. ECF No. 28-3 at 4. Video from his body-worn camera shows that as soon as the officer opened his car door, he could hear people outside the building in front of the specific address, speaking loudly. *Id.* at 00:04–20. Officer Torres Reilly walked toward the building and saw one man and two women outside. *Id.* at 00:18. Due to his prior familiarity, Officer Torres Reilly recognized the defendant and J.H. ECF No. 40 at 11:13–17.

Officer Torres Reilly immediately detained all three people. ECF No. 29-3 at 00:24–26. The defendant placed his hands on the roof of a nearby vehicle and told

2

officers that he was carrying a gun. *Id.* at 00:27–34, 01:02–04; ECF No. 28-2 at 01:48–01:55. Another officer searched the defendant and found a loaded 9mm handgun. ECF No. 28-2 at 02:29; ECF No. 28-3 at 4. The defendant was subsequently charged under 18 U.S.C. § 922(g)(1). ECF No. 1.

## II.  LEGAL STANDARD

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "[E]vidence seized in violation of the Fourth Amendment is subject to suppression under the exclusionary rule . . . the overarching purpose of which is 'to deter future unlawful police conduct.'" *United States v. Andrews*, 577 F.3d 231, 235 (4th Cir. 2009) (quoting *United States v. Calandra*, 414 U.S. 338, 347–48 (1974)) (other citation omitted).

A brief, investigatory stop is permissible under the Fourth Amendment if the officer has an objectively reasonable, articulable suspicion that criminal activity may be afoot, and that suspicion is particularized to the person stopped. *Kansas v. Glover*, 589 U.S. 376, 380 (2020); *United States v. Critchfield*, 81 F.4th 390, 393 (4th Cir. 2023). The government bears the burden of proving that a warrantless seizure was justified by reasonable suspicion. *Critchfield*, 81 F.4th at 393.

Reasonable suspicion requires more than a hunch but less proof than is required for probable cause. *Glover*, 589 U.S. at 380. Courts "consider the totality of the circumstances to determine whether the facts known to the officers at the time of the stop objectively gave rise to reasonable suspicion." *Critchfield*, 81 F.4th at 394.

## III.   ANALYSIS

The defendant asserts that the handgun is the fruit of an unlawful seizure because the totality of the circumstances did not provide reasonable suspicion for the investigatory stop. ECF No. 28 at 8–9.[1] In support of his motion, the defendant argues that the 911 calls should be subjected to the stringent standards applied to anonymous tips because the 911 operator did not relay the caller's identity to Officer Torres Reilly. *Id.* at 11–14.

Assuming without deciding that the 911 calls should be characterized as anonymous, the information Officer Torres Reilly possessed provided a sufficient basis to justify a brief seizure of the defendant. "[T]here are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (quotation marks and citation omitted). That is the case here.

The Fourth Circuit has identified several factors that can support the reliability of anonymous information, including "substantial detail about the individuals and the alleged criminal activity," "the basis of the informant's knowledge," indication that the informant's report is based on "contemporaneous personal observation of the call's subject," and "disclosure of information that would enable authorities to identify [the informant] if they deem it necessary to do so." *United States v. Elston*, 479 F.3d 314, 318 (4th Cir. 2007). The Fourth Circuit has

---

[1] The defendant also appears to challenge the admissibility of statements he made after police seized the gun. Those statements are not before the Court.

4

also found it significant when the 911 caller reports "an imminent threat to public safety"—such as "an individual who had expressly threatened to shoot someone in the very near future." *Id.*

Additionally, the Supreme Court has reasoned an anonymous tip's veracity is bolstered when the report is made over the 911 system, because the system's ability to identify callers is a safeguard against false reports, and an eyewitness's firsthand knowledge of ongoing criminality "lends significant support to the tip's reliability." *Navarette v. California*, 572 U.S. 393, 399–400 (2014).

Here, dispatch informed Officer Torres Reilly that the call came through the 911 system, and at the officer's request, the dispatcher relayed what the caller said the assailant was presently doing with the gun. ECF No. 40 at 9:14–10:15; Def. Ex. 2 at 00:31–00:57. Together, those facts support the conclusion that the caller's report was based on contemporaneous firsthand knowledge of the alleged domestic dispute. *See Navarette*, 572 U.S. at 399–400. Dispatch also informed the officer that the caller reported his mother's assailant had brandished a gun and impliedly "threatened to shoot someone" by pointing it at her head. *Elston*, 479 F.3d at 319. Additionally, the officer had sufficient information to allow him to identify the 911 caller, despite not being provided the caller's name—specifically, that the caller was a juvenile and the child of a mother and father who were also present at the address. Def. Ex. 2 at 00:14–00:19.

The "detail" conveyed to Officer Torres Reilly "about the individuals and the alleged criminal activity" was not expansive, *Elston*, 479 F.3d at 318, but the officer

5

confirmed all the details he knew immediately upon arriving at the scene: Officer Torres Reilly's body worn camera video indicates that he immediately observed individuals—among them a man and a woman—speaking with raised voices outside the address the officer received, where the 911 caller said his mother and her assailant would be. These observations suitably corroborated the information Officer Torres Reilly knew about the 911 calls. Therefore, Officer Torres Reilly "reasonably [] conclude[d] in light of his experience that criminal activity may be afoot and that the persons with whom he [wa]s dealing may be armed and presently dangerous," and what he saw as he approached the scene did not "serve[] to dispel his reasonable fear for his own or others' safety." *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

The defendant argues that because some of the events Officer Torres Reilly witnessed did not corroborate the information he had from the 911 caller, suspicion that the defendant had been involved in the reported domestic dispute was unreasonable. *See* ECF No. 28-1 at 00:22 (woman at the scene claiming "nothing is going on"); ECF No. 28 at 3 (asserting the woman had "no visible injuries or signs of recent emotional trauma"). But a few facts that arguably support a conclusion that criminal activity is *not* afoot do not automatically undo reasonable suspicion. *See Navarette*, 572 U.S. at 403 (reasonable suspicion "need not rule out the possibility of innocent conduct") (citation and quotation marks omitted).

Additionally, in considering the totality of the circumstances, the Court "must give due weight to common sense judgments reached by officers in light of their experience and training." *United States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004).

Officer Torres Reilly testified that he had responded to more than 50 domestic calls, including a prior call involving this defendant and J.H. ECF No. 40 at 6–11. "[C]ourts have recognized that domestic situations can escalate quickly . . . [as] violence may be lurking and explode with little warning." *Trull v. Smolka*, 411 F. App'x 651, 656 (4th Cir. 2011) (unpublished) (quotations and citation omitted). And Officer Torres Reilly was entitled to "couple knowledge of [the defendant's] prior criminal involvement with more concrete factors in reaching a reasonable suspicion of current criminal activity." *United States v. Sprinkle*, 106 F.3d 613, 617 (4th Cir. 1997). Under the totality of the circumstances, the officer's action in detaining the defendant "to [e]nsure his safety" and the safety of others in the vicinity was reasonable. *Adams v. Williams*, 407 U.S. 143, 148 (1972). Accordingly, the firearm discovered on the defendant's person is not the fruit of an unlawful seizure.

## IV.   CONCLUSION

Defendant Antwan Jermaine Hoskins's Motion to Suppress (ECF No. 28) is **DENIED**.

**IT IS SO ORDERED.**

/s/ Jamar K. Walker
United States District Judge

Newport News, Virginia
September 23, 2025